UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KUTEST KIDS EARLY INTERVENTION CO., <br><br> Plaintiff, <br><br> v. <br><br> OHIO SECURITY INSURANCE COMPANY, <br><br> Defendant. | Civil Action No.: 1:20-cv-11169-DJC |

## AMENDED COMPLAINT

Plaintiff Kutest Kids Early Intervention Co., files this Complaint for declaratory judgment and damages against Defendant Ohio Security Insurance Company ("Defendant" and/or "Ohio"), alleging the following:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief and damages arising from Plaintiff's contract of insurance with Ohio.

2. On March 16, 2020, Pennsylvania state and local authorities issued orders mandating Plaintiff to close its business in response to the COVID-19 pandemic.

3. Plaintiff had in place commercial insurance issued by Ohio, and expected it would cover, among other damages, business income losses from a pandemic and closure by a civil authority.

4. Plaintiff's insurance policy provides coverage for all non-excluded business losses. The policy does not contain an exclusion for pandemic, and it includes coverage for a loss

resulting from a closure by Order of civil authority. Therefore, the policy provides coverage for Plaintiff's losses.

5. Nevertheless, Ohio denied Plaintiff's claim for coverage.

6. As a result, Plaintiff is entitled declaratory relief that its business is covered under Plaintiff's insurance policy for all business losses that have been suffered and sustained, as well as an award of monetary damages for Ohio's breach of the policy.

## THE PARTIES

7. At all relevant times, Plaintiff Kutest Kids Early Intervention ("Plaintiff"), a Pennsylvania corporation, maintained its principal place of business at 3502 Scotts Lane, Philadelphia, Pennsylvania 19129.

8. Upon information and belief, at all relevant times, Defendant Ohio Security Insurance Company, a New Hampshire corporation, maintained its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

## JURISDICTION

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy is greater than $75,000.

10. Plaintiff is a citizen of Pennsylvania.

11. Defendant is a citizen of Massachusetts.

12. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b)(1) because Defendant resides in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b)(3) because Defendant is subject to this Court's personal jurisdiction.

**FACTUAL BACKGROUND**

**A.     Insurance Coverage**

13.    On or about October 24, 2019, Plaintiff purchased insurance from Ohio, policy number ***0107 (the "Policy")(redacted in accordance with Fed. R. Civ. Pro. 5.2(a)), expecting to be insured against losses, including, but not limited to, business income losses at its premises located at 3502 Scotts Lane in Philadelphia, Pennsylvania (the "Insured Premises"). The policy is attached as Exhibit 1.

14.    Plaintiff purchased from Ohio, among other coverages, Business Income and Extra Expense loss coverage for losses sustained due to the suspension of business operations, and coverage for closure by Order of Civil Authority.

15.    Plaintiff did not participate in the drafting of its Policy.

16.    Plaintiff did not participate in the negotiation of its Policy.

17.    Plaintiff possessed no power or ability to alter or negotiate any terms contained in the Ohio Policy.

18.    The Policy is an "all-risks" policy which provides coverage for the Insured Premises unless specifically excluded.

19.    The Policy provided that the insurance coverage applied to the actual loss of business income sustained due to the suspension of operations caused by "direct physical loss of or damage" to property at the Insured Premises. This coverage is identified as "Business Income." See Ex. 1, p. 7 of 61, Section I.A.5(f).

20.    The Policy also provided that the insurance coverage applied to extra expense that would not have been incurred if there had been no direct physical loss or damage to property at

the Insured Premises. This coverage is identified as "Extra Expense". <u>See</u> Ex. 1, p. 9 of 61, Section I.A.5(g).

21.   In addition, the Policy provided that the insurance coverage applied to the actual loss of business income sustained and the extra expenses incurred when access to the Insured Premises is prohibited by order of civil authority as the result of a covered cause of loss to property in the area of Plaintiff's Insured Premises. This coverage is identified as "Civil Authority." <u>See</u> Ex. 1, p. 10 of 61, Section I.A.5(i).

22.   The reasonable expectation of Plaintiff was that the Business Income, Extra Expense, and Civil Authority coverage contained in the Policy provided coverage when a pandemic and/or a civil authority forced closure of its business.

23.   The Policy does not exclude the losses suffered by Plaintiff, and thereby the Policy does provide coverage for the losses incurred by Plaintiff.

24.   Plaintiff suffered direct physical loss or damage within the definition of the Policy.

25.   Plaintiff's loss of use of the Insured Premises, as well as mitigation efforts at the Insured Premises, constitutes physical loss or damage.

26.   The virus and bacterium exclusion contained in the Policy does not apply because Plaintiff's losses were not directly caused by a virus, bacterium or other microorganism.

27.   Instead, Plaintiff's losses were caused by a pandemic and the civil authority orders issued by Pennsylvania Governor Tom Wolf and the City of Philadelphia to mitigate the spread of COVID-19.

**B.     Coronavirus Pandemic And Losses Incurred By Plaintiff**

28.     COVID-19 is a highly contagious airborne virus which rapidly spread across the world, including the United States.

29.     COVID-19 was declared a pandemic by the World Health Organization on January 20, 2020.

30.     On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency as a result of COVID-19.

31.     On March 16, 2020, Governor Wolf announced that Pennsylvania was imposing mitigation efforts to curtail the spread of COVID-19 uniformly across the Commonwealth, and called upon non-essential businesses to close.

32.     On March 16, 2020, an Emergency Order was issued by the Office of the Mayor and Department of Public Health of the City of Philadelphia ordering the closure of all non-essential businesses.

33.     On March 19, 2020, Governor Wolf issued an Order requiring all non-life sustaining businesses in Pennsylvania to cease operations and close all physical locations.

34.     On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia County, among several other counties.

35.     On April 1, 2020, Governor Wolf extended the Stay-At-Home Order to the entire Commonwealth of Pennsylvania.

36.     On May 22, 2020, Governor Wolf announced the state's plan to reopen counties within the Commonwealth.

37.     On July 15, 2020, due to an increase in COVID-19 cases, Governor Wolf issued an Order Directing Targeted Mitigation Measures, which mandated that all businesses are

required to conduct their operations remotely, "[u]nless not possible." The Order remains in effect.

38. As of September 1, 2020, there were 33,909 cases of COVID-19 cases in Philadelphia, and 1,751 deaths, and there was a "high risk of community transmission" in Philadelphia[1].

39. Plaintiff provides treatment and services to developmentally delayed children and their families.

40. The treatment Plaintiff provides includes physical therapy, speech therapy, occupational therapy, and specialized instruction.

41. Plaintiff's services are provided at the Insured Premises, and in children's homes throughout the City of Philadelphia.

42. The Insured Premises includes a therapy center for children and an indoor playground.

43. As a result of Civil Authority Orders, and the ongoing pandemic, Plaintiff's Insured Premises closed on or about March 16, 2020.

44. Since on or about March 16, 2020, while the Insured Premises remained closed, Plaintiff has provided tele-services for families that have opted in to receive the services.

45. Plaintiff started reopening its Premises during the week of August 17, 2020.

46. As a result of Civil Authority Orders, Plaintiff has been forced to make material alterations to the Premises, including rearranging furniture, installing plexiglass or other makeshift barriers, and affixing physical signs and markers around the Premises.

---

[1] https://www.phila.gov/programs/coronavirus-disease-2019-covid-19/updates/ (Accessed on September 1, 2020).

47.     As a direct result of the Civil Authority Orders, which mandated closure of the Plaintiff's Premises, the Premises incurred direct physical loss and damage.

48.     The Civil Authority Orders, alone, constitute a covered cause of loss within the meaning of the Policy.

49.     In addition, mitigation efforts and alterations to the Insured Premises caused direct physical loss and damage.

50.     Alternatively, and to the extent the Civil Authority Orders do not constitute a covered cause of loss within the meaning of the Policy, the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Insured Premises, by rendering it unusable for its intended purpose.

51.     Specifically, the highly contagious nature of COVID-19, particularly when people gather inside a building or other closed space for extended periods of time, precludes any meaningful use of the Insured Premises.

52.     Further, and as an additional basis for coverage under the Policy, the ubiquitous nature of the COVID-19 virus, has caused direct physical loss of or damage to property other than Plaintiff's Covered Property, and such loss or damage resulted in an action by civil authority prohibiting access to Plaintiff's Covered Property, within the meaning of the Policy.

53.     Given the nature of Plaintiff's business, Plaintiff and its Insured Premises were physically impacted by the Civil Authority Orders, the actual COVID-19 contamination and/or the probability of COVID19 contamination, and mitigation efforts, including, but not limited to alterations that have and/or will be completed at the Insured Premises.

54.     As a result of the pandemic and resulting Civil Authority Orders, Plaintiff suffered business income losses which are covered by the Ohio Policy.

55. Plaintiff faithfully paid premiums to Ohio for coverage to ensure the survival of the business due to the business closure caused by a pandemic and/or ordered by the Civil Authority.

56. It was Plaintiff's reasonable expectation that if a pandemic occurred and/or if civil authorities forced a full or partial closure of Plaintiff's business, the loss of income would be covered under the Policy.

57. As a result of the pandemic and Civil Authority orders, Plaintiff incurred, and continues to incur, a substantial loss of business income and additional expenses covered under the Ohio Policy.

58. On or about May 20, 2020, Plaintiff submitted a notice of loss to Ohio claiming a business income loss.

59. On or about May 22, 2020, Ohio sent Plaintiff a letter denying coverage under the Policy.

C. **The Virus Exclusion Does Not Apply**

60. The Policy contains a coverage exclusion for "loss or damage caused by or resulting from any virus, bacterium or other microorganism" (Form CP 01 40 07 06) (the "Virus Exclusion").

61. The Virus Exclusion does not preclude coverage for Plaintiff's claim under the Policy.

62. To the extent that the Civil Authority Orders, in and of themselves, caused and/or constitute direct physical loss of or damage to Plaintiff's Property, the Virus Exclusion simply does not apply.

63. Furthermore, to the extent that the coverage under the Policy derives from direct physical loss or damage caused by the COVID-19 virus, Ohio should be estopped from enforcing the Virus Exclusion, on principles of regulatory estoppel, as well as general public policy.

64. Upon information and belief, in 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.

65. Upon information and belief, in their filings with the various state regulators (including in Pennsylvania, where Plaintiff resides and purchased the Policy), on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

66. Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

67. Similarly, AAIS, in its "Filing Memorandum" in support of the Virus Exclusion, represented:

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .

> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded . . .

68. Upon information and belief, the foregoing representations made by the insurance industry were false.

69. By 2006, the time of the state applications to approve the Virus Exclusion, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

70. For example, in *Motorists Mutual Insurance Co. v. Hardinger,* 131 F. App'x 823 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that a genuine issue of fact existed as to whether the presence of E-Coli at the covered property impacted its functionality, or made the property otherwise useless or uninhabitable, sufficient to establish a physical loss or damage to the property.

71. The holding in *Motorists Mutual Insurance Co. v. Hardinger*, completely belies the statement made by the insurance industry to the state regulators that "property policies have not been a source of recovery for losses involving contamination by disease-causing agents . . . ."

72. Upon information and belief, the foregoing assertions by the insurance industry, made to obtain regulatory approval of the Virus Exclusion, were misrepresentations and for this reason, among other public policy concerns, insurers should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

73. Upon information and belief, securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change

the scope of coverage, the insurance industry effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.

74.     Under the doctrine of regulatory estoppel, the Court should not permit the insurance industry to benefit from this type of duplicitous conduct before the state regulators.

**COUNT I**
**DECLARATORY RELIEF**

75.     Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

76.     Under 28 U.S.C. §§2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

77.     Plaintiff's Policy is an insurance contract under which Ohio was paid premiums in exchange for promises to pay losses for claims covered by the Policy.

78.     A justiciable controversy exists between Plaintiff and Ohio about whether the Policy provides coverage for Plaintiff's losses.

79.     In the Policy, Ohio promised to pay for losses of business income sustained as a result of perils not excluded under the Policy.

80.     Plaintiff suffered losses of business income due to direct physical loss and/or physical damage at the Insured Premises.

81.     These losses triggered Business Income, Extra Expense, and Civil Authority coverage under the Policy, and additional coverages applicable to the losses claimed in this action.

82.     No exclusion to coverage, including the Virus Exclusion, applies.

83.     Plaintiff has complied with all applicable provisions of its Policy, including payment of premiums.

84. Ohio, without justification, disputes that the Policy provides coverage for Plaintiff's losses.

85. Plaintiff seeks a Declaratory Judgment (a) that its Policy provides Business Income, Extra Expense, and Civil Authority coverage because of losses attributable to the pandemic and civil authority actions; (b) that Ohio is obligated to pay for the full amount of Plaintiff's losses; and (c) that no exclusion in the Policy applies to bar, reduce or limit coverage for Plaintiff's claimed losses.

86. An actual controversy exists between Plaintiff and Ohio, as to the rights, duties, responsibilities and obligations of Ohio, in that Ohio disputes and denies that the Policy provides coverage for Plaintiff's losses.

87. Plaintiff's interest in the Ohio Policy and declaratory relief is direct, substantial, quantifiable, and immediate.

88. Declaratory Judgement is appropriate in the manner requested herein by Plaintiff.

## COUNT II
## BREACH OF CONTRACT

89. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

90. Plaintiff's Policy is an insurance contract under which Ohio was paid premiums in exchange for promises to pay losses for claims covered by the Policy.

91. The Policy includes coverage for Business Income, Extra Expense, Civil Authority and additional coverages applicable to the losses claimed in this action.

92. Plaintiff is entitled to recover all losses caused by the COVID-19 pandemic and/or civil authority orders.

93. Ohio was advised of Plaintiff's claims and demand for coverage under the Ohio Policy.

94. Plaintiff complied with all requirements of the Policy.

95. Ohio breached the terms and provisions of Policy by denying the claims of Plaintiff for all losses caused the pandemic and the civil authority orders.

96. The breach of the indemnification obligations under the Ohio Policy by Ohio has caused Plaintiff to suffer substantial loss and harm in excess of $75,000.

97. Ohio is required to pay Plaintiff all covered losses caused by COVID-19 and civil authority orders including Business Income, Extra Expense, Civil Authority, and other coverages under the Ohio Policy.

**REQUEST FOR RELIEF**

Plaintiff Kutest Kids Early Intervention Co. requests that the Court enter judgment in its favor and against Defendant Ohio Security Insurance Company, as follows:

A. As to Count I, a declaration that:

   i. All Business Income, Extra Expense, and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered under Plaintiff's Policy;

   ii. Defendant is obligated to pay for the full amount of the Business Income, Extra Expense, and Civil Authority losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above; and,

   iii. No exclusion to coverage, including the Virus Exclusion, applies.

B. As to Count II, a Judgment awarding monetary damages for breach of contract in an amount to be determined at trial.

C. An order requiring Defendant Ohio Security Insurance Company to pay both pre-and post-judgment interest on any amounts awarded;

D. An award of costs and attorneys' fees; and

E. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands at trial by jury as to all issues so triable.

Dated: September 2, 2020

        ZILBERBERG EINHORN KARPEL, P.C.
        *Attorneys for the Plaintiff*

        /s/ Samuel Karpel
By: _____
        Samuel Karpel (BBO#: 668404)
        66 Split Rock Road
        Syosset, New York 11791
        Telephone (718) 249-2202
        Facsimile (718) 256-7900
        skarpel@zeklawfirm.com

## **CERTIFICATE OF SERVICE**

I, Samuel Karpel, hereby certify that on this day, I electronically filed the within document with the Clerk of the Court using the CM/ECF system that will send notification of such filing(s) to all counsel of record. The document is available for viewing and downloading through the ECF system.

Dated: September 2, 2020                                         */s/ Samuel Karpel*
                                                                 Samuel Karpel